UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**ROBERT MILLER,**<br><br>Defendant. | Criminal No. 15-202<br><br>**OPINION** |

Robert Miller has been charged with knowingly distributing child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). This matter comes before the Court on an omnibus pre-trial motion filed by Miller in which he seeks to suppress physical evidence obtained from his home and statements he made to law enforcement. Miller's motion also requests that the Government provide him with certain discovery in advance of trial and that the Court give him permission to file additional pre-trial motions. In response, the Government opposes Miller's motion to suppress evidence. The Government also opposes some of Miller's requests for pretrial discovery and further argues that it is entitled to some pre-trial discovery from Miller.

For the reasons that follow, Miller's pre-trial motion will be **GRANTED in part and DENIED in part**. His motion to suppress the physical evidence retrieved from his home will be **DENIED,** and the Court will not hold a *Franks* hearing regarding that evidence. However, the Court will hold an evidentiary hearing to determine whether Miller's statements to law enforcement should be suppressed. Miller's motion for discovery will be **PARTIALLY GRANTED** and his request for permission to file additional pre-trial motions will be **GRANTED**. Finally, the Government's request for reciprocal discovery will be **GRANTED**.

I.   BACKGROUND

In April and May of 2014, law enforcement conducted undercover internet operations on a person to person (P2P) file sharing program called e-Mule. In connection with its investigation, law enforcement observed files being shared by a computer using the IP address 69.118.49.146. Law enforcement downloaded 115 files being shared by that IP address and observed that all of those files contained child pornography.

Shortly thereafter, law enforcement issued administrative subpoenas to Cablevision Systems Corporation ("Cablevision"). The subpoenas sought information

related to the IP address that had been sharing child pornography files on e-Mule.  In response, Cablevision informed law enforcement that the subscriber to the IP address was Defendant Robert Miller.  Cablevision also provided law enforcement with the location of the computer assigned to the IP address. Law enforcement later confirmed that Miller was the only individual residing at the location provided by Cablevision.

Armed with that information, law enforcement applied to a federal magistrate judge for the issuance of a search warrant for Miller's home.  In support of its application, law enforcement presented the magistrate judge with an affidavit detailing its investigatory efforts.  The affidavit described how P2P networks operate and how law enforcement gained access to e-Mule.  It also described how e-Mule allowed law enforcement to observe that images containing child pornography were being shared by IP address 69.118.49.146.  Finally, the affidavit described how law enforcement was able to use the IP address to ascertain the location of Miller's home.  On July 25, 2014, the magistrate judge authorized the search warrant.  Law enforcement then executed the warrant five days later.

According to Miller, the execution of the search warrant transpired in the following manner.  Between 5:30 and 6:30 AM, Miller awoke to the sound of law enforcement banging on the front door of his studio apartment.  Miller Aff. at ¶ 3.  At the time, Miller was sixty-five years old and had suffered a heart attack in the previous year.  *See id*.  Once Miller opened his front door, six law enforcement officers entered his apartment while two others remained outside.  *See id* at ¶ 4.  Two of the officers informed Miller that he was not under arrest and was free to leave at any time.  *Id*. at ¶5.  Despite those assurances, Miller did not feel free to leave because "[he] was surrounded in [his] studio apartment by six officers and two officers were located outside of [his] front door."  *Id*. at ¶ 7.  The officers allowed Miller to call his employer, but they listened while he made the call.  *Id*. at ¶ 8.  They also allowed Miller to use his bathroom, but they required him to keep the door open while one officer stood outside the bathroom door. *Id*. at ¶ 9.

Miller does not deny the fact that he was read his *Miranda* rights.  *See* Def's. Mot. At 4.  He also does not deny that he signed a *Miranda* form waiving those rights.  *See id*.  When law enforcement began to question Miller he responded that he thought he should have a lawyer present and that he thought he should remain silent.  Miller Aff. at ¶ 5.  Despite Miller's remark, the officers continued to interview him.  *See* Def's. Mot. at 4.

That same morning, law enforcement also conducted a physical search of Miller's computer.  They recovered 50 movie files of child pornography, e-Mule software, and two hard drive folders containing additional child pornography files.  *See id*.  After being interviewed and having his computer searched, Mr. Miller was placed under arrest.  *See id*.

2

## II. DISCUSSION

### A. <u>Motion to Suppress</u>

Miller's motion raises issues concerning the physical evidence retrieved from his home and the statements he made to law enforcement. The Court will address those issues in turn.

#### i. Miller's Request For a *Franks* Hearing Regarding Physical Evidence Retrieved From His Home

Miller requests that the Court hold a *Franks* hearing to determine whether the physical evidence seized from his home should be suppressed. He argues that a hearing is required because the warrant affidavit used to gain access to the home contained "material misstatements and material omissions." Specifically, Miller contends that the warrant affidavit does not explain how law enforcement obtained Miller's IP address.

Supreme Court precedent "requires suppression of evidence obtained pursuant to a warrant issued on the basis of a false statement that was both material to the finding of probable cause and made either knowingly or intentionally with reckless disregard for the truth." *U.S. v. Brown*, 631 F.3d 638, 641-42 (3d Cir. 2011) (citing *Franks v. Delaware*, 438 U.S. 438 U.S. 154, 155-56 (1978)). Where a defendant makes a "substantial preliminary showing" that a warrant affidavit included the type of false statement described above, a court must hold a *Franks* hearing to determine whether the physical evidence should be suppressed.

After reviewing the warrant at issue in this case, the Court is satisfied that a *Franks* hearing is not warranted. Specifically, the warrant makes clear that the e-Mule program allowed law enforcement to ascertain the IP address that was sharing child pornography:

> In April and May 2014, while conducting Internet undercover operations and using a P2P file-sharing program called e-Mule ("ED2K"), law enforcement downloaded video files containing pornography from a computer using the IP address 69.118.49.146 (the "Target Computer"). The Target Computer had made available video files containing child pornography, which other users of ED2K could access and download

Affidavit at ¶ 24. Nothing contained in Miller's motion sheds doubt on what the warrant in this case conveyed to the Magistrate Judge: law enforcement has the ability to detect an IP address through the use of file sharing software. *Cf. U.S. v. Horton*, --- Fed.Appx.

3

----, 2016 WL 279379, *1 (3d Cir. 2016) (remarking that law enforcement was able to identify IP address of computer that was sharing files on a network). *See also U.S. v. Hentzen*, --- Fed.Appx. ----, 2015 WL 4880150, *1 (noting that law enforcement obtained the defendant's IP address through the use of e-Mule). Moreover, the Third Circuit has held that probable cause may exist where law enforcement observes a particular IP address attempting to gain access to child pornography. *See U.S. v. Vosburgh*, 602 F.3d 512, 526 (3d Cir. 2010) ("evidence that the user of a computer employing a particular IP address possessed or transmitted child pornography can support a search warrant for the physical premises linked to that IP address" (citing *United States v. Perez*, 484 F.3d 735 (5th Cir. 2007))).

Miller's other arguments for suppression are similarly unavailing. Miller points to a number of alleged "omissions" contained in the warrant affidavit that, in his view, defeat a showing of probable cause. *See* Def's. Motion at 6 ("the [A]ffidavit makes no mention of the use of any confidential or cooperating witnesses"; "The Affidavit…does not specify e-Mule's requirements"). However, Court has reviewed the warrant affidavit and concludes that it provides a detailed explanation of how law enforcement conducted its investigation. The warrant outlines how file sharing works; how e-Mule operates as a file sharing network; how law enforcement observed that child pornography being shared by Miller's IP address; and how law enforcement then used the IP address to identify Miller and his home location.[1] The physical evidence retrieved from Miller's home is therefore admissible and Miller's request for a *Franks* hearing is **DENIED**.

### ii. Miller's Request For a Hearing Regarding Statements He Made to Law Enforcement

The Fifth Amendment provides that "no person…shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As a means of safeguarding the privilege against self-incrimination prior to trial, the Supreme Court has held that upon being subject to custodial interrogation, an accused must be warned "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation occurs where an accused is subject to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (citations and quotations omitted). Whether a person is in custody for the purposes of *Miranda* involves two discrete inquiries: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have

---

[1] Miller fails to explain how an unrelated FBI investigation involving the use of malware to obtain hidden IP addresses has any bearing on the Government's case against him. In fact, he does not even suggest that he ever cloaked his IP address to avoid detection.

4

felt that he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 416 U.S. 99, 112 (1995). After analyzing those factors, the court is to reach a conclusion as to whether there was a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Mathiason*, 429 U.S. at 495)). Interrogation occurs where an accused is "subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).

A district court may hold an evidentiary hearing on a defendant's motion to suppress. See Fed. R. Crim. P. 12(c) ("the Court…may also schedule a motion hearing.") However, an evidentiary hearing is required only where the defendant's motion is "sufficiently specific, non-conjectural, and detailed to enable the Court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *U.S. v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)).

There are two disputed questions concerning the statements Miller made to law enforcement. First, was Miller in custody for the purposes of *Miranda*? Second, assuming he was in custody, did Miller knowingly, intelligently, and voluntarily waive his *Miranda* rights? After reviewing the parties' submissions, the Court concludes that an evidentiary hearing is required to resolve these issues. Consequently, an evidentiary hearing will be scheduled for a later date.

### B. *Brady* Materials

Miller seeks disclosure of all *Brady* materials as soon as possible. *See Brady v. Maryland*, 373 U.S. 83 (1963). The Court's Order for Discovery and Inspection, dated June 9, 2015 (the "Standing Discovery Order") already requires the Government to comply with its *Brady* obligations. *See* ECF No. 15. And the Court has received no indication that the Government has failed to so. Because no further order regarding those obligations is necessary at this time, Miller's request is **DENIED WITHOUT PREJUDICE**.

### C. *Giglio* Materials

Miller seeks pre-trial disclosure of all "identifying information on all agents and law enforcement personnel involved in the investigation of this matter or in the arrest of Mr. Miller." Def's. Mot. at 12. While the Government responds that it will adhere to its *Giglio* obligations, it takes issue with two aspects of Miller's request. First, the Government argues that its *Giglio* obligations do not extend to every law enforcement officer involved in the investigation; instead, they extend only to witnesses who will

testify at trial. Second, the Government contends that it does not have to disclose *Giglio* materials prior to the commencement of trial.

The Government is correct when it argues that its *Giglio* obligations extend only to witnesses who will testify at trial. *See Buehl v. Vaughn*, 166 F.3d 163, 181 (3d Cir. 1999) ("The prosecution must also disclose evidence that goes to the credibility of crucial prosecution witnesses" (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972))). *See also U.S. v. Serrano*, No. 09-913, 2012 WL 6561556, *3 (D.N.J. Dec. 4, 2012) ("*To the extent the Government chooses to call Dwek and Cheatam as witnesses*, it will have an obligation to produce the information…pursuant to *Giglio*") (emphasis added). Therefore, Miller overstates the extent of the Government's *Giglio* obligations.[2]

The Government is also correct when it argues that the Court cannot require the pretrial production of *Giglio* material. *See U.S. v. Higgs*, 713 F.2d 39, 44-45 (3d Cir. 1983) (trial court abused its discretion by ordering the production of *Giglio* material one week prior to trial). The Government has indicated it will disclose *Giglio* materials sufficiently far in advance so that trial can proceed without interruption. At a later date, the parties will be required to provide the Court with an update regarding the Government's satisfaction of its *Giglio* obligations. Miller's current request for the disclosure of Giglio materials is therefore **DENIED WITHOUT PREJUDICE**.

### D. Jencks Act Materials

Miller seeks pretrial disclosure of all Jencks Act materials. However, the Jencks Act requires only that the Government produce statements of its witnesses at the end of their direct examination. See 18 U.S.C. § 3500(b). The Government has pledged that it will release Jencks Act materials sufficiently far in advance so that trial will not be delayed. Accordingly, at a later date, the parties will be required to update the Court on the Government's Jencks Act requirements. Miller's motion is **DENIED WITHOUT PREJUDICE**.

### E. Information About the Loss or Destruction of Evidence

While not accusing the Government of any wrongdoing, Miller asks that the Government inform him of whether any evidence has been destroyed or lost. Miller acknowledges that there is nothing to suggest that the Government has lost or destroyed evidence. Therefore, his current request is **DENIED WITHOUT PREJUDICE**.

---

[2] However, if evidence concerning a non-testifying law enforcement agent also qualifies as *Brady* evidence, there would be a duty to disclose. As stated previously, the Government has represented that it will turn over all *Brady* evidence to Miller.

6

### F. Preservation and Disclo sure of Rough Notes and Draft Reports

Miller moves to compel the Government to preserve and disclose all rough notes and draft reports prepared by investigative agents in this case. The Government has agreed to preserve all rough notes and reports, so that request is **DENIED AS MOOT**. Miller's disclosure request is **PARTIALLY GRANTED**. The Court will order the Government to submit those materials to the Court three days before trial for *in camera* review. *See United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983). The Court will then determine which, if any, of those materials the Government must provide to Miller.

### G. Request to File Additional Motions

Miller seeks leave to file necessary and additional motions in the future. This request is **GRANTED**, with the caveat that Miller must comply with the Court's Standing Discovery Order. Additionally, the Court will grant the Government an opportunity to respond to any such motions.

### H. The Government's Request for Reciprocal Discovery

The Government contends that Miller should provide it with reciprocal discovery. The right of the Government to reciprocal discovery is firmly established in Rule 16(b)(1) of the Federal Rules of Criminal Procedure. And the Government's request is unopposed. The Government's request is therefore **GRANTED**.

## III. CONCLUSION

For the foregoing reasons, Miller's pre-trial motion is **GRANTED in part and DENIED in part**. His motion to suppress the physical evidence retrieved from his home is **DENIED**. Moreover, his request for a *Franks* hearing concerning that evidence is also **DENIED**. However, the Court will hold an evidentiary hearing regarding the statements Miller made to law enforcement.

Miller's motion for discovery is **PARTIALLY GRANTED** and his request for permission to file additional pre-trial motions is **GRANTED**. Finally, the Government's request for reciprocal discovery is **GRANTED**.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 11, 2016**